# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

| | | |
|---|---|---|
| SELECTSUN GMBH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No: 1:14 CV 215 |
| | ) | |
| PORTER, INC., d/b/a Thunderbird Products, | ) | |
| and INTERNATIONAL NAUTIC, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION and ORDER

This matter is before the court on numerous motions, most notably cross-motions for summary judgment, arising from a dispute over the sale of a luxury boat. The boat purchaser, a German corporation called SelectSun GMBH ("SelectSun"), claims that it was sold a boat unsuitable for its intended use in the European Union ("EU") by Porter, Inc. ("Porter"), and its affiliates, International Nautic, LLC ("IN"), and Poker-Run-Boats ("PRB"). Porter claims that it was at the far end of a typical manufacturer-dealer-subdealer-purchaser transactional chain, and that it was not a party to any contract with SelectSun and should not be liable for a boat that it made precisely as instructed by its dealers. However, SelectSun contends that Porter, IN, and PRB are effectively one and the same.

For the reasons set forth below, the court finds that questions of fact prevent the court from resolving this case completely at the summary judgment stage. A full recitation of the factual background of this case, plus an analysis of the legal issues raised by the parties in various motions, follows.

# I.    BACKGROUND

## A.    Porter and its Affiliates

Porter is an Indiana corporation that manufactures boats under the brand names

Formula Boats and Thunderbird Products. (DE # 145 at 7, Snyder Dep. 14.) During the

relevant time period, Porter sold its boats internationally through IN, a Florida

company run by Leila Kitzinger Burger and Peter Burger. (*See* DE # 145 at 86, Porter

Dep. 17-18.) Porter authorized Leila[1] to refer to herself as "international sales

coordinator" and provided Leila with business cards. (DE # 145 at 86, Porter Dep. 17.)

Wayne Porter, Porter's Vice President of Sales, testified that Porter hired Leila as

"director of international sales" to bring capable dealers to the table to sell its products

in an international marketplace. (DE # 145 at 85, Porter Dep. 13-14.)

PRB was one such dealer in the German marketplace, run by Alfred Zurhausen,

a citizen of Germany. (DE # 145 at 89, Porter Dep. 31-32.) Orders placed with PRB went

through IN to Porter. (DE # 145 at 89, Porter Dep. 32.) It is undisputed that, during the

relevant time period, Porter's website listed PRB as a dealer. (DE # 144-5 at 3.) Wayne

testified that he was okay with PRB using the name Formula Boats to advertise. (DE #

145 at 90, Porter Dep. 34:7-14.) Porter had no written agreement with PRB or IN. (DE #

145 at 87, 90, Porter Dep. 21, 33.)

---

[1] Because the parties often refer to some of the individuals involved in this case
by their first names, the court follows the same convention herein with respect to those
individuals.

## B. SelectSun's Boat Purchase

In 2012, Erich Schwaiger, a German businessman and owner of SelectSun, decided to buy a Formula boat. According to Schwaiger, he called Porter wanting to buy a boat, but was told that he needed to work with "their Formula Boats representative in Germany, Alfred Zurhausen and Poker-Run-Boats." (DE # 146 at 2, Schwaiger Aff. ¶ 7.) Schwaiger attested that he told the Porter representative on the other end of the line that he wanted to buy directly from Porter, in order to receive the best price. (*Id.*) According to Schwaiger, he was assured that Alfred was "their representative" and that he was authorized to provide the best price. (*Id.*) Schwaiger further swore that the individual on the phone stated that "ordering through Alfred was the same thing as though [sic] ordering directly from the manufacturer." (*Id.*)

Schwaiger contacted Alfred and, through various communications, settled on a custom boat with certain features. According to Schwaiger, he decided to order twin 725 horsepower engines, at Alfred's recommendation, to make his boat extremely fast. (DE # 146 at 5, Schwaiger Aff. ¶ 14.) Schwaiger attested that he planned to use the boat in Europe, so he wanted the boat to be "CE certified," meaning it could be legally used in the European Union ("EU"). (DE # 146 at 4, Schwaiger Aff. ¶ 12.) An attachment to the October 2012 purchase agreement indicated that the boat would be CE certified.[2]

---

[2] There are two documents related to certification of a boat model for use in the EU. First, the boat manufacturer obtains a CE Certificate from a third party entity, IMCI. (DE # 145 at 216, Brune Dep. 161:4-8.) Second, the manufacturer takes information from the CE Certificate to fill out a Declaration of Conformity ("DOC") indicating the model's conformity with EU standards. (*Id.*)

(DE # 146-7 at 7, 17.) Technically, the boat was purchased by Schwaiger's company, SelectSun. (DE # 146 at 6, Schwaiger Aff. ¶ 19.) Under the agreement, SelectSun agreed to allow the boat to be shown at three boat shows. (DE # 146 at 5, Schwaiger Aff. ¶ 17.)

Schwaiger attested (DE # 146 at 4, Schwaiger Aff. ¶ 13) that, before he paid for the boat, Alfred supplied him with a copy of a document ("the Acknowledgment") signed by Wayne, which stated "Formula" at the top with a bird logo, included Porter's Decatur, Indiana, contact information, and stated:

FORMULA BOATS
<u>International Representation</u>

> Formula Boats, manufacturer of Performance, Cruiser, Bow Rider, Cuddy Cabin and Yacht products, does hereby acknowledge International Nautic LLC as its Director of International Sales.
>
> International Nautic LLC is the official representative of Formula Boats.
>
> Wayne M. Porter
> [signature]
> Vice President of Sales

(DE # 146-2 at 2.) A seal appears at the bottom of the Acknowledgment. (*Id.*)

Schwaiger further attested (DE # 146 at 4, Schwaiger Aff. ¶ 13) that he also received a business card from Leila, which stated "Formula Thunderbird Products" with a bird logo at the top; Leila's name; the title "International Sales Coordinator"; both a Florida address and Porter's Decatur, Indiana, address; phone and fax numbers with a Florida area code; and an email address with "nauticllc.com" as the domain. (DE

# 146-3 at 2.) Leila's business card accompanied wire transfer instructions for payment. (DE # 146 at 4, Schwaiger Aff. ¶ 13.) Schwaiger followed the instructions and wired payment to the specified account. In total Schwaiger paid approximately $840,000.00 for the boat, which he financed through a company called LeaseForce. (DE # 146 at 6-7, Schwaiger Aff. ¶¶ 22-23.) Schwaiger received a confirmation from IN, signed by Leila, that payment was received. (DE # 146-11.)

Schwaiger attended the Duesseldorf boat show in January of 2013, and claims that he met Wayne, who was with Peter. Schwaiger claims that Wayne thanked him for his business. (DE # 146 at 7, Schwaiger Aff. ¶ 24.) Wayne testified to meeting Schwaiger at Duesseldorf, but recalls being introduced to Schwaiger by Alfred. (DE # 145 at 93, Porter Dep. 48:24-25.) Wayne testified that he "thanked [Schwaiger] for his interest in Formula Boats." (*Id.*)

As Porter prepared to build the boat, numerous communications transpired between Leila and Porter's Dealer Administration Manager, Lori Snyder, frequently via email. While these emails are unclear, it appears that Lori and Leila communicated about the fact that the exhaust system Leila was requesting would not result in CE certification. (*See, e.g.,* DE # 150-37 at 4.) Though the parties disagree as to why and who made the decision, ultimately the boat was built with an exhaust system that was not compatible with CE certification.

Schwaiger attested that in April 2013, he heard from Alfred, who said the boat had arrived but was stuck in customs because there was "no conformity declaration

[DOC] or a CE certificate for the Boat, but that he was getting the documents together to get the Boat out of customs for me." (DE # 146 at 8, Schwaiger Aff. ¶ 27.) Though it is unclear how, the boat apparently cleared customs at some point, because in May 2013, Schwaiger received the boat. (DE # 146 at 8, Schwaiger Aff. ¶ 28.)

According to Schwaiger, many parts of the boat began to break down after he received it. (DE # 146 at 8-9, Schwaiger Aff. ¶ 33.) Schwaiger sent pictures of the damage to Alfred in August of 2013, but when Alfred had not responded with any news by September, Schwaiger hired Hubertus Kettner to inspect the boat and write a report on the damage. (DE # 146 at 9-10, Schwaiger Aff. ¶¶ 32-33.)

In the end of October or beginning of November, Kettner provided Schwaiger with a DOC, dated March 2013, that he had discovered in the course of his investigation. (DE # 150-12 at 8, Schwaiger Dep. II 80:21-81:11; DE # 146-13.) The DOC was purportedly produced by Porter, but Kettner informed Schwaiger that it was fraudulent. (*Id.*) Wayne testified that the March 2013 DOC was not produced by Porter, as Clarence Boyd, whose signature appeared on the DOC, was a former employee of Porter who did not work there during the relevant time period. (DE # 145 at 92, Porter Dep. 41-43.)

Alfred took the boat into his possession in November 2013 so he could show it at a boat show. (DE # 146 at 10, Schwaiger Aff. ¶ 37.) According to Schwaiger, Alfred forwarded him "new 'current' CE documentation on December 4, 2013." (DE # 146 at 10, Schwaiger Aff. ¶ 38; DE # 146-17 at 5.) The December 2013 DOC was signed by Jason

Brune, an engineer at Porter, who testified that he created the certificate for the model, not the specific boat, and only for purposes of displaying the boat at the boat show. (DE # 145 at 190, 216, Brune Dep. 59-60, 161-162.) Alfred never returned the boat after the boat show. (DE # 146 at 11, Schwaiger Aff. ¶ 40.) The current location of the boat is unclear.

Wayne testified that he believes that PRB has ceased to exist, and that Alfred is now running his business under the name Marine Partner Network. (DE # 145 at 90, Porter Dep. 35.) Similarly, Wayne believes that IN has ceased to exist, and Peter is running another business called INC Trading, possibly with Leila. (DE # 145 at 89, Porter Dep. 25-27.) At the time of Wayne's deposition on March 10, 2015, Porter was still working with INC Trading to fill some orders submitted via IN (DE # 145 at 87, Porter Dep. 24) and Marine Partner Network was still listed as a dealer on Porter's website (DE # 145 at 90, Porter Dep. at 36). However, on March 19, 2015, Wayne emailed Peter stating that Porter was discontinuing its working relationship with INC Trading / IN and Marine Partner Network / PRB due to the present litigation. (DE # 144-9 at 29.)

C.    **Litigation History**

SelectSun sued Porter and IN in this court, alleging various tort, fraud, contract, and warranty claims (twelve claims, in total), primarily based on Porter and IN's failure to provide a boat certified for use in the EU. (DE # 67.) No representatives of IN were ever produced for depositions, and IN's counsel withdrew from the case due to IN's

decision to abandon its defense. (DE ## 98, 99, 110.) Default judgment was entered

against IN as a sanction, though this court withheld entry of final judgment. (DE # 170.)

Neither Alfred nor PRB were named as defendants in this case, though it appears

litigation between Alfred/PRB and SelectSun is ongoing in Germany.

Porter moved to dismiss some of the claims against it (DE # 76), as well as for

summary judgment on all claims (DE # 149). SelectSun also moved for summary

judgment. (DE # 142.) The issues raised in Porter's motion to dismiss are almost entirely

duplicated in its motion for summary judgment,[3] so the court denies the motion to

dismiss as moot and utilizes summary judgment jurisprudence to address all of Porter's

arguments.

Porter also filed two motions to strike evidence submitted by SelectSun (DE

## 151, 164), a motion to exclude Kettner's purported expert testimony (DE # 134), and

a motion to reopen discovery in the event that Kettner's testimony is not excluded (DE

# 139). All of the aforementioned motions are fully briefed and ripe for ruling. Both

parties apply Indiana law with regard to this dispute.

## II.    LEGAL STANDARD

Before the court are cross-motions for summary judgment and related

evidentiary motions. Summary judgment is governed by Federal Rule of Civil

---

[3] Porter raises some non-duplicative issues in its motion to dismiss, such as
SelectSun's failure to allege its fraud claims with specificity, but because Porter is
entitled to summary judgment on those claims anyway, as explained below, the court
considers those issues moot.

Procedure 56. "[S]ummary judgment is appropriate — in fact, is mandated — where there are no disputed issues of material fact and the movant must prevail as a matter of law." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.,* 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

The parties' burdens in the context of cross-motions for summary judgment depend on whether the movant or the nonmovant would ultimately bear the burden of proof on a disputed issue at trial. Where the movant does not bear the burden of proof at trial, the oft-quoted burden-shifting framework of *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986), applies. Under *Celotex*, "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." 477 U.S. at 325. Once the moving party has met its burden, the nonmoving party must identify specific facts establishing that there is a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986); *Palmer v. Marion County,* 327 F.3d 588, 595 (7th Cir. 2003) (citing *Celotex*, 477 U.S. at 324). In doing so, the nonmoving party cannot rest on the pleadings alone, but must present fresh proof in support of its position. *Anderson,* 477 U.S. at 248; *Donovan v. City of Milwaukee,* 17 F.3d 944, 947 (7th Cir. 1994). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248. If no reasonable jury could find for the nonmoving party, then there is no "genuine" dispute. *Scott v. Harris,* 550 U.S. 372, 380 (2007).

On the other hand, where the movant would bear the burden of proof at trial, the movant "must show that the evidence . . . is 'so one-sided that . . . [the movant] must prevail as a matter of law'" in order to obtain summary judgment in its favor. *Reserve Supply Corp. v. Owens-Corning Fiberglass Corp.,* 971 F.2d 37, 42 (7th Cir. 1992) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986)); *Addicks Servs., Inc., v. GGP-Bridgeland, LP,* 596 F.3d 286, 293 (5th Cir. 2010) (where movant also bears burden of proof, "movant must establish beyond peradventure" all essential elements in order to warrant judgment in his favor); Moore's Fed. Practice 3d, § 56.13[1] (where party moves for summary judgment and bears the burden of proof on the issue, it must show that the evidence is so powerful that no reasonable jury would be free to disbelieve it).

The court's role in deciding a summary judgment motion is not to evaluate the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson,* 477 U.S. at 249-50; *Doe v. R.R. Donnelley & Sons Co.,* 42 F.3d 439, 443 (7th Cir. 1994). In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the nonmoving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.,* 45 F.3d 231, 234 (7th Cir. 1995). This notion applies equally where, as here, opposing parties each move for summary judgment in their favor. *I.A.E., Inc. v. Shaver,* 74 F.3d 768, 774 (7th Cir. 1996); *O'Regan v. Arbitration Forums, Ins.,* 246 F.3d 975, 983 (7th Cir. 2001) (with cross-motions, the court must construe all inferences in favor of the party against whom the motion under consideration is made).

The existence of cross-motions for summary judgment does not necessarily mean that there are no genuine issues of material fact. *R.J. Corman Derailment Serv., Inc. v. Int'l Union of Operating Eng'rs,* 335 F.3d 643, 647 (7th Cir. 2003). Rather, the process of taking the facts in the light most favorable to the nonmovant, first for one side and then for the other, may reveal that neither side has enough to prevail without a trial. *Id.* at 648. Mindful of these standards, the court addresses the parties' cross-motions in detail below.

## III. DISCUSSION

### A. Motions to Strike and Exclude

As a preliminary matter, Porter has filed two motions to strike, mostly attacking the translations or lack of translations of various German language documents submitted by SelectSun. (DE ## 151 & 164.) Only two of the many documents at issue are necessary for the court to decide the dispositive motions before it. The first is a document purporting to demonstrate LeaseForce's assignment of any claims against Porter to SelectSun (German version, DE # 146-9 at 3; English version, DE # 159 at 11) and the second is the purchase agreement itself (German and English versions, DE # 146-7). Porter's arguments do not relate to the substance of the translated words themselves; rather, Porter attempts to convince this court that some official standard of "authenticity" or "certification" exists regarding translations of documents, and that SelectSun has failed to meet those standards. However, no such standards exist.

"[A] party challenging the authenticity or accuracy of a translation bears the burden of presenting a competing translation, permitting the trier of fact to chose which version to credit." *Telewizja Polska USA, Inc. v. Echostar Satellite Corp.,* No. 02 C 3293, 2004 WL 2367740, at *5 (N.D. Ill. Oct. 15, 2004) (citing *United States v. Briscoe,* 896 F.2d 1476, 1492 (7th Cir. 1990)). Porter has offered no competing translation nor has it attacked the legitimacy of the contents of the translations, so its motions to strike are denied as to the two aforementioned documents. Because the rest of the challenged documents are unnecessary for the present analysis, the remainder of the arguments in the motions to strike are denied as moot.

Though the reports and/or statements of Kettner, SelectSun's consultant, are not necessary to resolve the cross-motions for summary judgment discussed herein, the court notes that Porter has moved to exclude Kettner's statements because SelectSun failed to properly disclose that it intended to use Kettner as an expert in this case under Federal Rule of Civil Procedure 26(a)(2). (DE # 134.) Porter further requests that, in the event that the court declines to exclude Kettner's statements, the court reopen discovery so that Porter can depose Kettner and retain its own counter-expert. (DE # 139.)

Exclusion of an expert witness's statements is the sanction for failure to abide by Rule 26(a)(2). Fed. R. Civ. P. 37(c)(1). However, Porter failed to abide by the "meet and confer" requirement set forth by this district's local rules before filing the motion requesting this sanction. N.D. Ind. Local Rule 37-1 ("A party filing any discovery motion must file a separate certification that the party has conferred in good faith or

attempted to confer with other affected parties in an effort to resolve the matter raised in the motion without court action."). Accordingly, the motion to exclude and motion to extend discovery are denied without prejudice.

**B.** **Real Party in Interest**

Porter argues that LeaseForce, the company through which SelectSun financed the boat, is the actual owner of the boat, not SelectSun, and that as such, SelectSun is not the proper plaintiff in this case. In response, SelectSun submitted a copy of a document, in German, purporting to be LeaseForce's transfer of all claims against Porter to SelectSun on November 10, 2013. (DE # 146-9 at 3.) Then, when Porter moved to exclude this document for lack of a proper accompanying translation, SelectSun simply "withdrew" the document. (DE # 155 n.2.) Awkwardly, SelectSun later offered a translation of the document in a supplemental filing. (DE # 159 at 11.)

While the court would have preferred more timely and less confusing documentation regarding the assignment of claims between LeaseForce and SelectSun, the later-offered translation did not prejudice Porter or delay this court's proceedings, and the actual evidence itself – the German document – was timely filed. Given the existence of the assignment and the translation, the substance of which Porter has not contested, there appears to be no genuine dispute that SelectSun is the real party in interest.

## C.     Agency

Before addressing the merits of SelectSun's twelve claims against Porter, the court must determine whether IN and/or PRB were "agents" of Porter such that the actions of IN and/or PRB might be legally attributed to the Porter. Many of the defensive arguments contained in Porter's motion for summary judgment rise and fall depending on whether agency can be established, so the court must address this question first. The parties disagree as to whether IN and/or PRB were agents of Porter under the doctrines of "actual authority" and "apparent authority," and each doctrine will be addressed in turn below.[4]

### 1.     *Actual Authority*

Under Indiana law, the elements of actual authority are: (1) manifestation of consent by the principal; (2) acquiescence by the agent; and (3) control exerted by the principal. *Medtech Corp. v. Indiana Ins. Co.,* 555 N.E.2d 844, 850 (Ind. Ct. App. 1990). Control is essential to the establishment of actual authority. *United Artists, Inc. v. Indiana Dep't of Revenue,* 459 N.E.2d 754, 758 (Ind. Ct. App. 1984) ("An agency relationship can exist only if the agent is subject to the principal's control with respect to the work details"); *Northern Assur. Co. of America v. Lark,* 845 F. Supp. 1301, 1306 (S.D. Ind. 1993) ("the keystone of the agency relationship is the principal's ability to define and control the agent's activities").

---

[4] Though SelectSun mentions "inherent authority" in a list of methods of establishing agency under Indiana law, it makes no serious argument that the principle applies in this case, so the court will not address it.

In *Leon v. Caterpillar Industries, Inc.*, 69 F.3d 1326, 1333 (7th Cir. 1995), the Seventh Circuit Court of Appeals, applying Indiana law, found that actual authority did not exist where the manufacturer exerted only a "small measure of control" over a dealer's day-to-day business activities. Specifically, the manufacturer reimbursed the dealer for performing warranty service and required the dealer to visit the manufacturer's customers. Despite this small degree of control by the manufacturer, the court found it convincing that the dealer was independently owned and operated, set its own prices, and was free to enter into dealership agreements with companies other than the manufacturer. *Id.* The court further explained: "Calumet is an authorized Caterpillar dealer who purchases products and equipment from Caterpillar, including forklifts, with title and possession passing from Caterpillar to Calumet only after Calumet has made full payment. Calumet, in turn, resells the products to its customers at prices set by Calumet, and retains the profit." *Id.* at 1335-36.

In another case, the Indiana Court of Appeals found no agency relationship to exist where drugstore lessees hired employees, set their wages and hours, purchased supplies, paid the rent, compiled tax data, kept their own books and records, and bought and sold their own inventory. *Mooney-Mueller-Ward, Inc. v. Woods,* 371 N.E.2d 400, 403-04 (1978). The court found that no principal-agent relationship existed between the lessees and lessors, citing the importance of control as the critical factor for finding agency under Indiana law. *Id.*

In contrast, another Indiana court held that a mortgage company was "merely a conduit" of the banks it served, as it functioned as a conduit simply to receive payments on mortgages. *United Artists Theatre Circuit, Inc. v. Indiana Dep't of State Revenue, Gross Income Tax Div.,* 459 N.E.2d 754, 758 (Ind. Ct. App. 1984). The court noted that the banks possessed the power to control the collection procedures used and had the right to require that mortgagor's payments be made directly to them. Further, the court noted that the entire amount received from mortgagors was transmitted to the banks, with no profit retained by the mortgage company itself. Based on these facts, the court concluded that the mortgage company was an agent of the banks. *Id.*

In this case, SelectSun has pointed to only one supported[5] fact suggesting that Porter had control over IN or PRB: Wayne's testimony that he was okay with PRB using Formula Boats' name to advertise. (DE # 145 at 90, Porter Dep. 34:7-14.) Notably, Wayne did not testify that he required PRB to do so. There is no evidence that Porter controlled PRB or IN's decisions regarding hiring/firing employees, purchasing supplies, or where or when work was performed. Further, there is no evidence that Porter was involved in PRB or IN's tax matters or recordkeeping. The record does not indicate that Porter controlled what boats PRB or IN could buy or sell, or that Porter otherwise controlled inventory matters. Further, there is no evidence that the price paid by Schwaiger for the boat was passed, in full, onto Porter, with no profit retained by

---

[5] SelectSun points to many other "facts" to bolster its actual authority argument, but these "facts" are unsupported by the evidence in the record, so they will not be considered.

PRB or IN. In short, the evidence as a whole shows, at best, that Porter exerted a "small measure of control" over either PRB or IN, a level of control insufficient to establish "actual authority" under Indiana law. *Leon,* 69 F.3d at 1333.

###### 2. *Apparent Authority*

However, it is a closer call on the question of "apparent authority." Apparent authority "is the authority that a third person reasonably believes an agent to possess because of some manifestation from his principal." *Sword v. NKC Hosps., Inc.,* 714 N.E.2d 142, 148 (Ind. 1999). The manifestation must be made by the principal to a third party and reasonably cause the third party to believe that an individual is an agent of the principal and to act upon that belief. *Id.* The manifestations can originate from direct or indirect communication. *Id.* They can also originate from advertisements to the community. *Id.* Because the manifestations conveying the existence of authority must be made by the principal, the court focuses only on those facts, pointed to by SelectSun and properly supported by the record, involving direct or indirect communications from Porter to Schwaiger.

SelectSun has pointed to several facts regarding Porter's manifestations to Schwaiger, both direct and indirect, regarding PRB. First, Schwaiger attested that when he called Porter to inquire about buying a boat, he was told he needed to work with "their Formula Boats representative in Germany, Alfred Zurhausen and Poker-Run-Boats." (DE # 146 at 2, Schwaiger Aff. ¶ 7.) Schwaiger further attested that when he explained that he would like to buy directly from the manufacturer to get the best price,

he was assured that Alfred was "their representative" and that Alfred was authorized to provide the best price. *(Id.)* Schwaiger further swore that the individual on the phone stated that "ordering through Alfred was the same thing as though [sic] ordering directly from the manufacturer." *(Id.)* Second, during the relevant time period, Porter's website listed PRB as a dealer. (DE # 144-5 at 3.) Third, Wayne testified that he was introduced to Schwaiger by Alfred at the Duesseldorf boat show, where he "thanked [Schwaiger] for his interest in Formula Boats."[6] (DE # 145 at 93, Porter Dep. 48:24-25.)

That Wayne and Alfred were in the same place at a boat show is not terribly persuasive, though the fact that Porter listed PRB as a dealer on its website supports an inference that the two were linked in some business matter, at least. But the most compelling fact offered by SelectSun is Schwaiger's purported telephone conversation with a Porter employee. The details of this phone call are murky; Schwaiger does not recall when it occurred or to whom he spoke (DE # 150-10 at 12, Schwaiger Dep. I 102-103), and it could be disbelieved that a Porter employee made such a statement at all. However, these are matters of credibility, and this court cannot weigh credibility at this stage. *Payne v. Pauley,* 337 F.3d 767, 770 (7th Cir. 2003).

At the summary judgment phase, the court can only conclude that a reasonable fact-finder *could* credit Schwaiger's testimony that a Porter employee told him that

---

[6] Though Schwaiger attested that he saw Wayne with Peter at the Duesseldorf boat show (DE # 146 at 7, Schwaiger Aff. ¶ 24), the court affords SelectSun the full benefit of all possible favorable facts when assessing the merits of Porter's motion for summary judgment.

ordering from Alfred was the "same thing" as ordering from Porter and, based on that alone or coupled other facts, conclude that Porter's manifestations to Schwaiger reasonably caused Schwaiger to believe that PRB was Porter's agent. A reasonable fact-finder could also conclude the opposite, but those dual possibilities are what prevent Porter from succeeding on its motion for summary judgment in this regard.

SelectSun has also moved for summary judgment, of course, but as the party ultimately bearing the burden of proof, SelectSun would have to demonstrate that the evidence is "so one-sided" that SelectSun must prevail as a matter of law, *Reserve Supply,* 971 F.2d at 42, and that simply is not the case here. As the court explained above, a reasonable fact-finder could decide either for Porter or for SelectSun on whether PRB possessed apparent authority to act as Porter's agent, so SelectSun's motion for summary judgment is also denied on this issue.

SelectSun's case for apparent authority is perhaps even stronger with regard to IN. First, Schwaiger attested (DE # 146 at 4, Schwaiger Aff. ¶ 13) that Alfred gave him the Acknowledgment, which was signed by Wayne, stated "Formula" at the top with a bird logo, referred to IN as the "Director of International Sales," included Porter's Decatur, Indiana, contact information, and stated: "International Nautic LLC is the official representative of Formula Boats." (DE # 146-2 at 2.) Second, Schwaiger attested (DE # 146 at 4, Schwaiger Aff. ¶ 13) that he received a business card from Leila which stated "Formula Thunderbird Products" with a bird logo at the top, Leila's name, and

the title "International Sales Coordinator." (DE # 146-3 at 2.) Wayne testified that Porter

provided Leila with the business cards. (DE # 145 at 86, Porter Dep. 17.)

Leila's business card lends some support to Schwaiger's argument that he

reasonably perceived IN and Leila as an arm of Porter based on Porter's manifestations.

The card, which originated with Porter and made its way to Schwaiger via Leila,

contains Porter's brand name and logo, as well as Porter's address. Further, the title

"International Sales Coordinator" could be read by a reasonable fact-finder as a title

indicative of an employee or agent rather than a separate, independent dealer. The

Acknowledgment is just as persuasive. The Acknowledgment, signed by Wayne, refers

to IN as the "Director of International Sales" and the "official representative" of

Formula Boats, not as a "dealer" or "independent sales representative" or some other

title with an indicia of independence. A reasonable fact-finder could conclude that

Schwaiger could have reasonably believed that IN/Leila were actually part of the

Porter corporate organization, not a distinct entity, based on these representations by

Porter.

On the other hand, a reasonable juror assessing these documents could conclude

that Schwaiger was not reasonable in concluding that IN/Leila were agents of Porter.

After all, some information on the business card indicates that IN had some degree of

independence from Porter, such as the "nauticllc.com" email domain (rather than a

Porter email domain) and a separate address in another state. Further, a reasonable fact

finder could view the Acknowledgment as merely a certification of the manufacturer-

dealer relationship between separate companies, Porter and IN. Because reasonable fact-finders could disagree on whether IN possessed apparent authority to act as Porter's agent, the question cannot be resolved as a matter of law, and both parties' motions for summary judgment are denied on this issue.

### D. Fraudulent and Negligent Misrepresentation

In Counts 1 and 2 of its complaint, SelectSun asserts claims of fraudulent misrepresentation and negligent misrepresentation, respectively. In its briefing, SelectSun relies upon the March 2013 DOC as the representation, on Porter's part, that forms the basis of the claim.[7] SelectSun claims that the DOC induced acceptance of the boat by Schwaiger.

Porter points out that SelectSun lacks evidence demonstrating one element common to both claims: reliance. Unless SelectSun can demonstrate that it justifiably relied on the DOC, it cannot succeed on these claims. *Wise v. Hays,* 943 N.E.2d 835, 840 (Ind. Ct. App. 2011) (fraudulent misrepresentation); *Darst v. Illinois Farmers Ins. Co.,* 716 N.E.2d 579, 586 (Ind. Ct. App. 1999) (negligent misrepresentation). SelectSun, which bears the burden of proof on these claims, has pointed to no evidence that Schwaiger relied upon the DOC, or even saw the DOC, before he paid for or received the boat in April of 2013. Schwaiger's affidavit carefully stated that the DOC "came with the boat,"

---

[7] As an afterthought in its briefing on Count 1, SelectSun also mentions, in a short paragraph, that the December 2013 DOC is further evidence of "fraudulent activity" (DE # 143 at 24), but SelectSun fails to form a coherent argument around the December document with respect to any misrepresentation claim, so the court declines to address it in detail.

yet he did not attest that he viewed it. (DE # 146 at 8, Schwaiger Aff. ¶ 28.) His

deposition testimony is similarly lacking in proof of reliance:

> Q: When was [the DOC] received by SelectSun?
> A: I'm not 100 percent certain but I can answer that, at the latest we received a copy together with the expert opinion delivered by Mr. Kettner, which I believe was on the 14th or 15th of November. Mr. Kettner was given the commission for this expert opinion at the end of September, and he had done some investigation into this false certificate. And I would estimate that I gained knowledge of it in the week - - one or two weeks before, so end of October, beginning of November I would think.
> Q: Okay. So did SelectSun receive that document from Mr. Kettner?
> A. Yes.

(DE # 150 at 8, Schwaiger Dep. II 80:21-81:11.)

If anything, Schwaiger's deposition establishes affirmatively that he did *not* view

the DOC until many months after he paid for and accepted the boat. Because SelectSun

has failed to point to evidence indicating a genuine issue of material fact on the issue of

reasonable reliance, Porter is entitled to summary judgment on the misrepresentation

claims.

As for SelectSun's own motion for summary judgment on these claims, the

motion is denied for lack of evidentiary support. The court cannot conclude that any

reasonable juror would find for SelectSun on Counts 1 and 2, much less all reasonable

jurors.

### E. Aiding and Abetting and Conspiracy

SelectSun readily admits that aiding and abetting (Count 3) and civil conspiracy

(Count 4) are not independent torts under Indiana law. (DE # 158 at 26.) Accordingly,

Porter's motion for summary judgment is granted as to these claims without further ado. SelectSun is free to raise principles of aiding and abetting and conspiracy, so long as the law permits, to establish a defendant's liability for any viable claim during the trial phase. Obviously, SelectSun's motion for summary judgment on these claims is denied.

### F. Negligence

In Count 5 of its complaint, SelectSun alleges that defendants were negligent. Porter has moved for summary judgment on this claim, arguing that the well-settled economic loss doctrine prohibits SelectSun from pursuing a negligence claim against it when the losses incurred were purely economic. *Indianapolis-Marion Cty. Pub. Library v. Charlier Clark & Linard, P.C.,* 929 N.E.2d 722, 729 (Ind. 2010) ("[T]he economic loss rule provides that a defendant is not liable under a tort theory for any purely economic loss caused by its negligence (including, in the case of a defective product or service, damage to the product or service itself).").

SelectSun argues that an exception to the economic loss doctrine applies, citing *U.S. Bank, N.A. v. Integrity Land Title Corp.,* 929 N.E.2d 742 (Ind. 2010). In that case, the Indiana Supreme Court specifically recognized the following circumstances in which an exception to the economic loss doctrine applies: lawyer malpractice, breach of a duty of care owed to a plaintiff by a fiduciary, breach of a duty to settle owed by a liability insurer to the insured, and negligent misrepresentation. *Id.* at 745-46.

The first three exceptions are factually inapplicable to the case at hand, and the court has already decided that Porter is entitled to summary judgment on any claim for negligent misrepresentation. Because SelectSun has pointed to no viable exception to the economic loss doctrine, its argument fails. Porter is entitled to summary judgment on SelectSun's negligence claim, and SelectSun's motion for summary judgment on this claim is denied.

### G.    Contract and Warranty Claims

Most of SelectSun's complaint consists of allegations that Porter created and breached various types of contracts and warranties in its dealings with SelectSun. Specifically, SelectSun asserts claims for breach of an express contract (Count 6), breach of an implied-in-fact contract (Count 7), breach of the duty of good faith and fair dealing (Count 8), breach of an express warranty (Count 9), breach of an implied warranty (Count 10), violation of the Magnuson Moss Warranty Act (Count 11), and unjust enrichment (Count 12). With a few exceptions as discussed below, Porter's defense to each of these claims, as articulated in its motion for summary judgment, depends on a finding that IN and/or PRB were *not* agents of Porter during the relevant time periods. The court has already found there to be a genuine issue of material fact as to this matter, so neither Porter nor SelectSun is entitled to summary judgment on any of these claims based on lack of agency.

Regardless of the outcome of the agency question, Porter claims that Count 8, breach of the duty of good faith and fair dealing, should fail because such a duty only

exists in connection with certain types of contracts. However, Porter itself admits that a contract under the Uniform Commercial Code ("U.C.C.") is one of those types, and a contract for the sale of a boat undoubtedly is a contract for the sale of "goods" under the U.C.C. as adopted by the Indiana legislature. Ind. Code § 26-1-2-105 ("'Goods' means all things (including specially manufactured goods) which are movable . . ."); *Richards v. Goerg Boat & Motors, Inc.*, 384 N.E.2d 1084, 1087 (Ind. Ct. App. 1979) (analyzing dispute over sale of boat under U.C.C.), *abrogated on other grounds by Hyundai Motor Am., Inc. v. Goodin,* 822 N.E.2d 947 (Ind. 2005). Porter is not entitled to summary judgment on Count 8 on the grounds asserted.

Porter also argues, with regard to Count 9 (breach of express warranty) and Count 11 (violation of Magnuson Moss Warranty Act) that its warranty is available on its website. Perhaps Porter's statement is intended to invalidate Counts 9 and 11, but Porter devotes no more than a sentence or two to the idea, and fails to cite a single case or statute in support, to say nothing of Porter's failure to address the problem of proving that the warranty information presently available on its website was also available during the relevant time period. Summary judgment cannot be granted for Porter on this issue, which is replete with legal and factual holes.

## IV. CONCLUSION

For the foregoing reasons, the court:

(1)     **GRANTS** Porter's motion for summary judgment on Counts 1 through 5, inclusive; and **DENIES** the same on Counts 6 through 12, inclusive (DE # 149);

(2)        **DENIES** SelectSun's motion for summary judgment (DE # 142);

(3)        **DENIES, as moot,** Porter's motion to dismiss (DE # 76);

(4)        **DENIES** Porter's motions to strike (DE ## 151, 164);

(5)        **DENIES** Porter's motion to exclude expert testimony (DE # 134);

(6)        **DENIES** Porter's motion for an extension of time to complete discovery (DE # 139);

(7)        **DENIES, as moot**, SelectSun's motion for sanctions (DE # 102) and motion for default judgment (DE # 160), both against International Nautic, in light of the court's order of default judgment against International Nautic as a sanction under Rule 16(f)(1) (*see* DE # 170); and

(8)        **ORDERS** the parties to file a joint status report by May 1, 2017, regarding settlement negotiations and the willingness of the parties to send an individual with full settlement authority to appear in person before a Magistrate Judge for a settlement conference.

**SO ORDERED.**

Date: March 30, 2017

s/James T. Moody_____
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT